# Court of Appeals

## Tenth Appellate District of Texas

---

### 10-25-00042-CV

---

Billy D. Baker and Gina A. Baker,
Appellants

v.

Ernest L. Meadows, Larry Anders, Mark J. Wills,
JM Design Build, LLC, Danny P. Bamber and Max Holton,
Appellees

---

On appeal from the
77th District Court of Limestone County, Texas
Judge Patrick H. Simmons, presiding
Trial Court Cause No. 32860-A

---

JUSTICE SMITH delivered the opinion of the Court.

### MEMORANDUM OPINION

Billy D. Baker and Gina A. Baker appeal from an adverse judgment in favor of Ernest L. Meadows, Larry Anders, Mark J. Wills, JM Design Build, LLC, Danny P. Bamber, and Max Holton in Appellees' suit for injunctive relief. In two issues, Appellants contend they proved their affirmative defense of waiver, and the trial court abused its discretion by granting the permanent injunction. We affirm.

## BACKGROUND

Appellants purchased a vacant lot in Cedar Creek Estates, a subdivision on Lake Limestone, and placed a mobile home on it. All lots in the subdivision are subject to deed restrictions, including a restriction against mobile homes being used as permanent residences. Appellees, owners of lots in Cedar Creek Estates, sued Appellants seeking removal of Appellants' mobile home and a permanent injunction prohibiting their use of a mobile home on their Cedar Creek Estates property. After a trial before the court, the court rendered judgment in favor of Appellees, ordered Appellants to remove the mobile home by March 4, 2025, and permanently enjoined Appellants from using a mobile home on their lot in Cedar Creek Estates. This appeal ensued.

## WAIVER OF RESTRICTIONS

In their first issue, Appellants contend the trial court erred in ruling that they did not prove their affirmative defense of waiver. They argue that they proved that the entire set of deed restrictions in Cedar Creek Estates have been abandoned and waived. Therefore, they assert they need not comply with the restriction against use of a mobile home on their property.

**Standard of Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

When a party challenges the legal sufficiency of an adverse finding on an issue on which it bore the burden of proof at trial, such as a finding against a defendant on an affirmative defense, that party must demonstrate on appeal that the evidence establishes as a matter of law, all vital facts in support of the issue, and the party may prevail on appeal only if no evidence supports the trial court's adverse finding and the contrary position is conclusively established. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A matter is conclusively established only if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). The reviewing court must consider evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *Id.* at 822.

**Applicable Law**

Waiver is the voluntary relinquishment of a known right or intentional conduct inconsistent with claiming that right. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Waiver by abandonment of a restrictive covenant can be found when lot owners acquiesce in substantial violations within a restricted area, and that acquiescence can amount to either an abandonment of the covenant or a waiver of the right to enforce it. *See Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958). To establish abandonment, a party must prove that the violations are so great as to reasonably lead to the conclusion that the restrictions in question have been abandoned. *See Tanglewood Homes Ass'n, Inc. v. Henke*, 728 S.W.2d 39, 43 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). This determination requires consideration of the number, nature, and severity of the existing violations, any prior acts of enforcement of the restriction, and whether it is still possible to realize to a substantial degree the benefits intended through the covenant. *Id.* at 43-44.

Furthermore, complete abandonment of the entire set of restrictions is demonstrated when there is evidence of violations so pervasive that they have destroyed the fundamental character of the neighborhood. *See Vance v. Popkowski*, 534 S.W.3d 474, 480 (Tex. App.—Houston [1st Dist.] 2017, pet.

denied). In other words, the evidence must show intentional conduct by the proponents of the restrictions inconsistent with claiming the right to enforce them, by acquiescing in extensive and material violations of the restrictions so as to amount to an abandonment of the restrictions as a whole, including a nonwaiver provision, resulting in waiver of the right to enforce them. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017); *Vance*, 534 S.W.3d at 480; *Zent v. Murrow*, 476 S.W.2d 875, 880 (Tex. App.—Austin 1972, no writ).

**Discussion**

<u>Trial Court's Findings and Conclusions</u>

The trial court found that several of the restrictions have been abandoned and waived, without identifying the abandoned restrictions, but found that the restriction pertaining to mobile homes as a permanent residence is still binding. It found that the restrictions prohibit mobile homes from being used as temporary or permanent residences in the subdivision. The court found that there are over 200 lots in the subdivision and there are only five lots, including the subject property, that have mobile homes.

In its conclusions of law, the trial court concluded that several of the restrictions have been abandoned and thus waived; the restriction as to a mobile home being prohibited as a permanent residence is still viable;

violations of the restriction are not so great as to lead the mind of the average man to reasonably conclude that the restrictions as to a mobile home have been abandoned and thus enforcement barred; and plaintiffs are entitled to a permanent injunction.

Testimony

Appellees presented two expert witnesses who testified that mobile homes have a negative impact on the value of other property. Kara McLelland, a real estate broker, also testified that the presence of abandoned cars would affect property values. She testified that recreational vehicles, Airbnb's, residents living in metal buildings, dilapidated homes, overgrown property, and travel trailers with permanent utilities could affect property values.

Ernest Meadows, one of the plaintiffs, testified that he would not have purchased his home if he knew a mobile home could be moved in next to his property. Appellants' mobile home is across the street from his house. Meadows believes the presence of the mobile home is detrimental to his property value. Appellants told him they knew about the restrictions before they purchased the lot, but they planned to move the mobile home onto the lot anyway. Meadows hired an attorney to send a demand letter to Appellants warning them that they cannot place a mobile home on the lot, but they did it anyway. Meadows then filed this lawsuit.

Meadows admitted that many of the lot owners are in violation of deed restrictions including: having a metal roof instead of a composite or cedar shingle roof; having structures on a lot when there is no house on the lot; having recreational vehicles that appear to be permanent; having horses; having piers made with permanent pilings rather than floating piers; allowing houses to be dilapidated; failing to keep lots mowed; allowing junk and old cars to be on the lots; allowing gas wells in the subdivision; allowing tiny homes, mobile homes and at least one business; and allowing a county road to be gated off.

Regarding one travel trailer, Meadows agreed with counsel that it "looks pretty bad," and he stated that it affects the value of homes. Looking at a photo of a different house, and commenting that "[i]t doesn't look good," Meadows testified that if that house had been across the street from the home he purchased, he would not have purchased it. Regarding a photo of another house, one that had old appliances in the yard, Meadows said it affects the value of the other homes to a degree.

Shirley Abernathy owns a home on four lots on the cove, next to Ernest Meadows. When she purchased the home, she relied on the restrictions and believed there would be no mobile homes. She testified that there were no mobile homes around her home until Appellants moved their mobile home onto

their lot. Her home is currently listed for sale. She has gotten negative feedback about the presence of Appellants' mobile home. She believes that it is hurting her ability to sell at the price she is asking. She is opposed to having a mobile home in her neighborhood.

Abernathy stated that her roof is a composition roof in compliance with the restrictions but admitted that her pier is not a floating pier. However, no one is making an issue about her pier. She testified that if something is visible to her property, it would impact her more. Therefore, she is fine with broken down cars, livestock, dilapidated houses, and gas wells as long as they do not affect her or her property value.

Debra Loe and her husband, David, own a home in Cedar Creek Estates. Debra would rather the neighborhood not allow mobile homes because property values go down. She did not anticipate a mobile home being moved into her neighborhood.

David Loe testified that when they purchased their lot they knew about the restrictions, including the restriction against mobile homes. They relied on that restriction, and he is opposed to Appellants' mobile home. He admitted that broken down cars and travel trailers used as permanent residences can bring down property values. He acknowledged that there are dilapidated

houses in the neighborhood.  Referencing one that is farther away from his home, he testified it did not necessarily affect his property value.

Billy Baker testified that there are over 200 lots in Cedar Creek Estates. He drove through the neighborhood before he purchased a lot, and he did not believe the restrictions were being enforced.  He described numerous violations including: structures on lots without a home; overgrown lots not being maintained; forty houses have metal roofs; there are thirty-eight sheds, six or eight of which are used as tiny houses in violation of the minimum square feet requirements; some residents have horses and chickens; there are no floating piers; there are gas wells in two areas of the subdivision; there are metal buildings, shacks, or temporary structures on some lots; one woman's house is not livable so she lives in her van; there are travel trailers set up as permanent residences; and there are junk cars, junk appliances, and used materials on some lots.  Baker testified that there are five mobile homes in Cedar Creek Estates, including his.  There are more houses toward the lake and his is the only mobile home in the more populated area.  He also said he saw a double-wide mobile home on the waterfront when he drove through the subdivision.

Gina Baker testified that they drove through the subdivision before purchasing their lot and they read the deed restrictions.  After touring the subdivision, they deduced that the restrictions were not being enforced.  She

identified the various violations committed by plaintiffs Holton, Meadows, and Anders, as well as violations on other lots near the Baker lot. She believes the "shack" on the lot next door to their lot devalues their property.

She testified that one lot owner runs a quilt business on her property and that some lot owners keep chickens or horses. She also noted that there are travel trailers, travel trailer hook ups, and metal buildings on some lots. She stated that piers are not in compliance with the restrictions and the majority of the homes by the lake have metal roofs.

On cross-examination, Baker admitted that they did not seek approval from anyone before buying the mobile home and placing it on their lot. She also testified that the restrictions against metal roofs and the construction of piers with permanent pilings have been waived because no one has followed those deed restrictions.

Dennis Mills, who owns a home and lot in Cedar Creek Estates, testified that he toured the neighborhood before buying his lot, but he was unaware of the deed restrictions at the time. He believes about seventy-five percent of the homes have metal roofs, including his home. He testified that there are two vacation rentals in the neighborhood, there are dilapidated houses, there is a lot that does not have a house on it but has equipment stored on it, and Holton's

lot, which contains piles of building materials, looks like a construction business. Mills believes most lots have deed restriction violations.

<u>Analysis</u>

Billy Baker testified that there are over 200 lots in Cedar Creek Estates, and the trial court found that there are over 200 lots in the subdivision. Appellants assert that "virtually every lot in Cedar Creek Estates subdivision was in violation of deed restrictions." Although many different restrictions have been violated, to determine that the entire set of restrictions has been abandoned, it is appropriate to consider, among other factors, to what extent each restriction was violated. *See Zent*, 476 S.W.2d at 880.

The trial court did not specify which restrictions had been abandoned and thus waived. Several witnesses testified as to the prevalence of metal roofs. It is possible the court found that the requirement for wood shingle or composition roofs had been abandoned. The evidence is clear that the deed restriction against piers with permanent pilings has not been followed as lot owners overwhelmingly prefer that type over floating piers.

In the entire subdivision, there are about thirty sheds not being used as tiny homes, there are about six or eight tiny homes, gas wells in two separate areas in the subdivision, at least two horses, one or two businesses, a sign advertising a business, two vacation homes, and five mobile homes.

Considering the number of these violations by category, and keeping in mind there are over 200 lots, none of these violations can be considered extensive. *See Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 290-91 (Tex. App.—San Antonio 1999, pet. denied) (held that restriction against mobile homes was not waived where there were fourteen mobile homes in 800 lot community).

Violations of other restrictions were noted without specifying how many lots were in violation, including restrictions against placing a structure on a lot without a house, and requiring lots to be kept in a clean and sanitary condition. While there are multiple recreational vehicles, an undetermined number of chickens, several lots that have structures in the absence of a house, several lots that have junk on the property or are overgrown, and there are some houses that have fallen into disrepair, the evidence does not show that the number of the lots that are in violation is great as compared to the number of total lots in the subdivision.

Another factor to consider is whether the violations are material. *Id*. Both of Appellees' experts testified that the presence of mobile homes has a negative impact on the value of other property. Meadows testified that he would not have purchased his property if he had known a mobile home could be placed next to him. Abernathy testified that the presence of Appellants'

mobile home is hurting her ability to sell her home at the price she wants for her property. Debra Loe testified that if her house is not surrounded by other homes, her property value goes down, and she has a problem with Appellants' mobile home being there. David Loe relied on the restriction against mobile homes and is opposed to Appellants' mobile home.

But the owners' testimony about violations of other restrictions show they are generally less concerned about the effects of those violations. Meadows owns two lots, one of which does not have a house on it. He does not think that lot, which has a Conex on it for storage, as well as his boat and recreational vehicle, is detrimental to the value of property next to it. He does not think the travel trailer across the road from his house brings down the value of his property. He testified that travel trailers are not as detrimental to the value of surrounding property as mobile homes. He believes the dilapidated house that is farther from his house does not have much effect. He agreed with counsel that a travel trailer shown in a photo looks "pretty bad" and could eventually affect the value of homes, although there are currently no homes near it. When shown a photo of an old house that may have been a doublewide trailer, he said it affects value to a degree.

Abernathy testified that she is fine with broken down cars, livestock, dilapidated houses, and gas wells in the neighborhood as long as they do not

affect her and her property value. David Loe testified that broken down cars and people living in travel trailers can run down property values. However, a dilapidated house that is farther away from his house does not necessarily affect the value of his property. Gina Baker testified that the shack next to her lot devalues their property.

The property owners acknowledge that violations of restrictions such as the ban on living in travel trailers and the requirements to keep lots clean and keep homes in good repair could affect property values, especially if those nonconforming lots are in close proximity to other homes. But the trial court could have found that the witnesses did not believe these violations were currently having a detrimental effect on the value of their property. *See City of Keller*, 168 S.W.3d at 822. Therefore, the trial court could have found, based on this evidence, that those violations were not material. *See Cowling*, 312 S.W.2d at 946 (some violations are so trivial in character that the failure to complain about them does not preclude enforcement of other restrictions).

Gina Baker understandably believes the shack next to the Baker's lot has a detrimental effect on the value of their property. But she is the only one who complained about a shack, and there is no evidence that the other shacks in the neighborhood are affecting property values.

The evidence conclusively shows that mobile homes devalue the homes around them. Other than the presence of mobile homes, there is no evidence that any other violation was detrimental to the other lot owners. Accordingly, the evidence shows that the only violation that has a material effect on the neighborhood and other lot owners is the presence of mobile homes.

Furthermore, the restrictions include a nonwaiver clause. Paragraph XV of the deed restrictions provides:

> The waiver or invalidation of any one or more of these restrictions, covenants, or conditions by judgment, court order or otherwise, shall in nowise constitute a waiver of or invalidate any other restriction, covenant or condition, but in all such other restrictions, covenants and conditions, shall continue to remain in full force and effect.

While a nonwaiver provision may be waived, Appellants would have to provide sufficient evidence of conduct constituting a complete abandonment of the restrictions as a whole, including the nonwaiver provision. *See Vance*, 534 S.W.3d at 479-80. Complete abandonment is shown through evidence of violations so pervasive that they have destroyed the fundamental character of the neighborhood. *Id*. at 480. Here, the general plan and scheme for the subdivision has been followed, therefore the restrictions were not abandoned. *Simms v. Lakewood Village Prop. Owners Ass'n, Inc.*, 895 S.W.2d 779, 786 (Tex. App.—Corpus Christi–Edinburg 1995, no writ). As explained above, there

were material violations of just one restriction, the ban on mobile homes. Considering the number, nature, and severity of all violations, we conclude that Appellants did not show that Appellees acquiesced in extensive and material violations of the restrictions so as to amount to an abandonment of the restrictions as a whole, including the nonwaiver provision, resulting in waiver of the right to enforce them. *See Shields Ltd. P'ship*, 526 S.W.3d at 485; *Cowling*, 312 S.W.2d at 945; *Zent*, 476 S.W.2d at 880.

Appellants did not establish as a matter of law all vital facts in support of their affirmative defense. *See Francis*, 46 S.W.3d at 241. We overrule Appellants' first issue.

### PERMANENT INJUNCTION

In their second issue, Appellants assert that the entire set of deed restrictions have been abandoned and waived. Therefore, the argument continues, the trial court abused its discretion by granting the permanent injunction prohibiting them from using a mobile home on Lot 4 in Block E of the Cedar Creek Estates subdivision.

The grant of a permanent injunction is reviewed for abuse of discretion. *Operation Rescue-Nat'l v. Planned Parenthood*, 975 S.W.2d 546, 560 (Tex. 1998). Generally, that discretion is abused and subject to reversal when the trial court misinterprets or misapplies the law or acts arbitrarily or

unreasonably. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Ordinarily, to be entitled to a permanent injunction, a party must prove (1) a wrongful act, (2) imminent harm, (3) an irreparable injury, and (4) the absence of an adequate remedy at law. *Pike v. Tex. EMC Mgt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020). However, an injunction may be available in a restrictive covenant case without showing injury and harm. *See Jennings v. Bindseil*, 258 S.W.3d 190, 198 (Tex. App.—Austin 2008, no pet.). A remedy at law is not adequate unless that remedy is as complete, practical, and efficient to the ends of justice and its prompt administration as is equitable relief. *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 600 (Tex. App.—Austin 2015, no pet.).

Appellants committed a wrongful act when they moved a mobile home onto their lot in Cedar Creek Estates in violation of a deed restriction against mobile homes. Additionally, as explained above, Appellants did not prove entitlement to their affirmative defense of abandonment and waiver.

Appellees' expert witnesses addressed the issue of damages, testifying that mobile homes devalue surrounding properties. McLelland explained that value is subjective. She testified that market value is determined by the amount of money a ready, willing, and able buyer would give for a property. If

buyers are not interested in living next to a mobile home, she explained, that factor limits the number of buyers and has a negative impact on the price.

While the evidence shows that the presence of a mobile home has a negative impact on the value of other properties, we conclude that it is probably impossible to ascertain the extent of damages to the other homeowners with any degree of accuracy. Appellees' remedy at law is inadequate if their damages cannot be determined with some precision. *See id.* Accordingly, the trial court did not abuse its discretion by permanently enjoining Appellants from using a mobile home on Lot 4 in Block E of the Cedar Creek Estates subdivision. *See Feldman*, 436 S.W.3d at 76. We overrule Appellants' second issue.

## CONCLUSION

Having overruled Appellants' issues, we affirm the trial court's judgment.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: July 9, 2026

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed
CV06

